Filed 8/18/14  P. v. Karawia CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B248405 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA355163) |
| v. | |
| OUSAMA W. KARAWIA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Sam Ohta, Judge.  Affirmed.

David M. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Marc A. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

A jury found defendant Ousama W. Karawia guilty of one count of grand theft (Pen. Code, § 487, subd. (a); count 2),[1] one count of insurance fraud by presenting a false claim to the State Compensation Insurance Fund (SCIF) (§ 550, subd. (b)(1); count 7), one count of insurance fraud by making misrepresentations to SCIF regarding facts material to the insurance premium (Ins. Code, § 11880, subd. (a); count 13), and four counts of possession of an assault weapon (former § 12280, subd. (b), renumbered § 30605; counts 15-18).[2] The trial court sentenced defendant to five years in state prison on the fraud by misrepresentation count, suspended execution of that sentence, and placed defendant on probation for a period of five years on the condition that he serve 240 days in custody, which could be served by electronic monitoring.[3] On the remaining counts, the court suspended imposition of sentence and placed defendant on probation for five years. Defendant appeals from the judgment (order granting probation), contending that in treating his assault weapons convictions as felonies rather than misdemeanors, the trial court misunderstood the scope of its discretion and abused that discretion. We disagree and affirm.

---

[1] All further undesignated statutory references are to the Penal Code.

[2] He was acquitted of conspiracy (§ 182, subd. (a)(1)) and several counts of insurance fraud (Ins. Code, §§ 550 & 11880, subd. (a)) and failure to file an income tax return (Rev. & Tax. Code, § 19706). The jury also found not true excessive taking allegations under former section 12022.6, subdivision (a)(1) and (2), and section 1203.045, subdivision (a).

[3] The court postponed proceedings regarding restitution.

BACKGROUND

Because defendant's contentions relate solely to sentencing, we only briefly describe the evidence introduced at trial, viewed in the light most favorable to the judgment and presuming in support every fact that reasonably can be deduced from the evidence. (See *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)[4]

Through a wholly-owned holding company, defendant owned several security companies that provided security services for construction sites, office buildings, and other sites and activities in California and other states and countries. The companies operated under the name International Protective Services and derivative names. Defendant was tried with codefendant Allan Bailey.[5]

The prosecution's theory was that beginning in 2003, defendant conspired with Bailey to defraud SCIF of approximately $10 million. The alleged scheme was as follows: by using similar names for his companies and by misrepresenting the ownership structure of them when applying for coverage from SCIF in 2003 through 2006, defendant obtained workers' compensation coverage for all of his employees at the cost of insuring only those who were employed by a single company, International Armored Solutions. Further, the prosecution alleged that defendant conspired with Bailey to present workers' compensation claims under the International Armored Solutions policy for injured workers employed by defendant's other companies. Audits conducted by SCIF for the years 2004 through 2006 revealed that in those years, 46 employees made claims on the policy issued to International Armored Solutions. When asked by an investigator from SCIF about five specific claimants who did not work for International Armored Solutions, defendant said the claimants had been mislabeled as out-of-state

---

[4]     We are aided in this task by the trial court's thoughtful summary of the charges, evidence, and convictions at the time of sentencing.

[5]     Bailey was convicted of failing to file a tax return (Rev. & Tax. Code, § 19706) and possession of an assault weapon (former § 12280, subd. (b)). He is not a party to this appeal.

employees. He did not say that they worked for companies other than International Armored Solutions. These claimants received substantial payouts from SCIF on the policy issued to International Armored Solutions in the sums of approximately $44,000 (to Maria Bernabe for two claims), $78,000 (to Rogelio Talacay), $31,000 (to Judy Hoiten), $1,600 (to Martha Jacquez), and $83,000 (to Miguel Zuniga).

The jury acquitted defendant of conspiracy, most of the related insurance fraud counts, and filing a false tax return, and it found the excessive taking allegations not true. (See fn. 2, *ante*.) It convicted defendant of only three counts based on his dealings with SCIF: count 2, grand theft (§ 487); count 7, presenting a false claim to SCIF related to a $38,000 payout to employee Maria Bernabe in 2005 (§ 550, subd. (b)(1)); and count 13, misrepresenting facts material to the insurance premium related to the SCIF audit for 2005 (§11880, subd. (a)).

As relevant to defendant's assault weapons convictions, on April 15, 2009, a search warrant was executed at defendant's residence in connection with the investigation of defrauding SCIF. Defendant told investigators that a safe in an upstairs room contained firearms. A search of the safe revealed several firearms, including four that are classified as assault weapons under California law: a Colt .223 caliber Model HBAR Sporter, an L. Franchi Model SPAS12 12-gauge shotgun, an IMI Uzi nine-millimeter Model B, and a Calico nine-millimeter Model M-900. To lawfully possess such weapons, an owner was required to have registered them by January 1, 1992. (Former § 12285, subd. (f).) The relevant data bases did not contain any such registration filed by defendant for any of the assault weapons in the safe.

## DISCUSSION

Taking out of context a comment made by the trial court in sentencing codefendant Bailey, defendant contends that the trial court applied improper criteria in declining to treat defendant's assault weapons convictions as misdemeanors. Defendant also contends that the court abused its discretion. We disagree with both arguments.

4

## I.     Relevant Proceedings

In addition to his convictions for grand theft and insurance fraud, defendant was convicted of four counts of possessing an assault weapon, in violation of former section 12280, subdivision (b)(1) (now § 30605, subd. (b)(1)).  The crime is an alternative felony/misdemeanor, punishable in the court's discretion (§ 17, subd. (b)) by imprisonment in the county jail for a period not exceeding one year or by imprisonment in state prison for 16 months, two, or three years.  (See §§ 30605, subd. (a), 1170, subd. (h)(1); see also *In re Jorge M.* (2000) 23 Cal.4th 866, 873 [former § 12280, subd. (b), was an alternative felony/misdemeanor].)

In his written sentencing memorandum, defendant asked that *all* of his convictions be reduced to misdemeanors.  As relevant to the assault weapons convictions, defendant noted that he had significant firearms training, a permit from the State of California to carry an exposed firearm, and a federal license to sell firearms.  He was also a reserve deputy with the Los Angeles County Sheriff's Department.  Defendant argued that the assault weapons convictions should be treated as misdemeanors because his four guns were legally purchased by one of his companies before the date of the regulation of such weapons, they were kept securely in a safe, and they were never used.  Further, he was a first time offender.

The sentencing hearing was held in two sessions.  At the first sentencing session, held on February 20, 2013, defendant appeared with codefendant Bailey.  The court engaged in a lengthy review of the charges, evidence, and convictions, and also gave a thoughtful analysis of relevant sentencing considerations relating to defendant's case, focusing on the insurance fraud convictions and defendant's personal characteristics.  In deciding to grant defendant probation, the court discussed all of the general sentencing objectives of California Rules of Court, rule 4.410 and all of the criteria affecting probation in rule 4.414.  The court also discussed the option of sentencing defendant under realignment (§ 1170, subd. (h)) to a sentence without probation or a split sentence.

The court chose straight probation because it intended to order restitution as a condition of probation.

Insofar as the assault weapons convictions were concerned, the court stated: "Based on the nature of his profession as a provider of security guard services, I do not find that [defendant's] possession of an assault weapon changes the picture in any significant way. This is not a man who has aggressive tendencies who was arrested for illegal arms possession. This is a man who bought these arms legally but then later failed to adequately account for them with the State of California. Given the totality of these considerations and in light of the jury's verdict in this matter, the appropriate level of punishment in this case is for the court to grant probation to the defendant."

The court then stated its intent to impose the upper term of five years on the insurance fraud conviction in count 13, reasoning that "the amount taken is of such severity that the imposition of the high term is appropriate." The court also stated its intention to suspend execution of that sentence and place defendant on probation for five years. As to counts 2, 7, and 15 through 18 (15-18 being the assault weapons convictions), the court stated its intention to suspend imposition of sentence and place defendant on probation for five years. The court then considered the relevant sentencing criteria for codefendant Bailey and elected probation for him as well.

Defendant's attorney then argued concerning the amount of jail time that the court might impose and asked for community service. After a lengthy colloquy with defense counsel concerning defendant's background and the hardship the instant case imposed on him, the court stated that it intended to impose a certain amount of jail time and ordered defendant to return for that determination.

Codefendant Bailey was convicted of a single count of possessing an assault weapon and four counts of failing to file an income tax return. Before the court scheduled the second phase of the sentencing hearing, Bailey's attorney brought up the subject of reducing those convictions to misdemeanors. The court replied: "I have the discretion to either do that or not to do that. And in my opinion, when a person evades filing an income tax for a number of years and the amount of income that he is earning is

6

fairly substantial, then that person . . . is worthy of a felony conviction." Bailey's counsel asked if the court's thinking would be the same as to the assault weapons conviction "because it is a bit different." The court replied: "It is a bit different, but he has not complied with the requirements of all of the elements that make a first-time offense a misdemeanor. So as I stated in my denial of the motion for a new trial, your client . . . may not have known specifically [that the gun he possessed was classified as an assault weapon], but he is a man who has routine contact with firearms. And as such, I see him in a different position than someone who was perhaps given an assault weapon by a grandfather, had it in his closet, didn't know that it was an assault weapon . . . . I just see a different person sitting in front of me."

At no time did defendant's attorney or counsel for codefendant Bailey suggest that the court somehow misunderstood the nature of its discretion to reduce the assault weapons convictions to misdemeanors.

At the second sentencing proceeding on March 18, 2013, the court again heard argument on how much custody time to impose on defendant. The court then formally sentenced defendant to the upper term of five years on count 13, suspended execution of that sentence, and placed defendant on probation for five years, subject to the condition that he serve 240 days in county jail, which could be served by electronic monitoring. As to the remaining counts, including the assault weapons convictions, the court suspended imposition of sentence and placed defendant on probation for five years. Defendant's attorney did not request that the assault weapons convictions be treated as misdemeanors and did not suggest that the court failed to understand its discretion to do so.

## II.    The Trial Court Understood the Proper Nature of Its Discretion

Seizing upon the trial court's comment to Bailey's attorney that Bailey had "not complied with the requirements . . . that make a first-time offense a misdemeanor," defendant contends that the court misunderstood the nature of its discretion to reduce Bailey's assault weapons conviction to a misdemeanor. He then extrapolates that the court must also have misunderstood the nature of its discretion to reduce *his* assault

7

weapons convictions as well. According to defendant, in the comment concerning Bailey not having complied with requirements to make a first time offense a misdemeanor, the court was referring to former section 12280, subdivision (b), which provided that a first time offense is punishable by a $500 fine if certain conditions are met—conditions that neither Bailey nor defendant could meet.**6** Defendant argues that by referring to this provision, the court was relying on factors that have "nothing to do with the misdemeanor/felony wobbler issue."

We note that having failed to contend below that the trial court misunderstood its discretion, defendant forfeited this issue on appeal. (*People v. Scott* (1994) 9 Cal.4th 331, 356.) In any event, a full consideration of the court's comments in response to Bailey's attorney shows that the court fully understood its discretion.

"A court ha[s] broad discretion under section 17, subdivision (b) in deciding whether to reduce a wobbler offense to a misdemeanor. [Citation.] We will not disturb the court's decision on appeal unless the party attacking the decision clearly shows the decision was irrational or arbitrary. [Citation.] Absent such a showing, we presume the court acted to achieve legitimate sentencing objectives." (*People v. Sy* (2014) 223 Cal.App.4th 44, 66.)

As stated in *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 978 (disapproved on other grounds in *People v. Williams* (2005) 35 Cal.4th 817, 832): "We find scant judicial authority explicating any criteria that inform the exercise of section 17[, subdivision] (b) discretion. [Citation.] However, since all discretionary authority is

---

**6** Former section 12280, subdivision (b) stated in relevant part: "[A] first violation of these provisions is punishable by a fine not exceeding five hundred dollars ($500) if the person was found in possession of no more than two firearms in compliance with subdivision (c) of Section 12285 and the person meets all of the following conditions: [¶] (1) The person proves that he or she lawfully possessed the assault weapon prior to the date it was defined as an assault weapon pursuant to Section 12276, 12276.1, or 12276.5. [¶] (2) The person has not previously been convicted of a violation of this section. [¶] (3) The person was found to be in possession of the assault weapon within one year following the end of the one-year registration period established pursuant to subdivision (a) of Section 12285. [¶] (4) The person relinquished the firearm pursuant to Section 12288, in which case the assault weapon shall be destroyed pursuant to Section 12028."

contextual, those factors that direct similar sentencing decisions are relevant, including 'the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or his traits of character as evidenced by his behavior and demeanor at the trial.' [Citations.] When appropriate, judges should also consider the general objectives of sentencing . . . . The corollary is that even under the broad authority conferred by section 17[, subdivision] (b), a determination made outside the perimeters drawn by individualized consideration of the offense, the offender, and the public interest 'exceeds the bounds of reason.' [Citation.]"

In the present case, when first asked by Bailey's counsel to reduce the tax fraud and assault weapons conviction to misdemeanors, the court acknowledged that it had discretion to do so. When later directed specifically to the assault weapons conviction, the court's reference to the first time offender provisions of former section 12280, subdivision (b) was entirely appropriate—Bailey was not eligible under that provision. Further, the comment was merely prefatory to the heart of the court's analysis, which was that because Bailey was involved in the security business and familiar with firearms, the court did not consider him deserving of reduction to a misdemeanor. That consideration is clearly within the proper bounds of discretion. Moreover, the record shows that the trial court exercised extraordinary care in sentencing and showed superior knowledge of sentencing rules. In light of those facts, there is no basis to conclude that the court failed to understand either the nature of its discretion or factors relevant to determining whether to treat Bailey's single assault weapons conviction (or by extension defendant's four assault weapons convictions) as a felony rather than a misdemeanor.

## III.    The Trial Court Did Not Abuse Its Discretion

Defendant also contends that in implicitly denying defendant's written request to treat the assault weapons convictions as misdemeanors, the trial court abused its discretion. We are not persuaded.

Defendant possessed not one or two, but four, illegal assault weapons. Based on his background—significant firearms training, possession of a permit from the State of

9

California to carry an exposed firearm, possession of a federal license to sell firearms, and employment as a reserve deputy with the Los Angeles County Sheriff's Department—it reasonably could be inferred that he knew possession of those guns was illegal, even though they initially were purchased legally. Moreover, by violating the law in possessing those weapons, defendant also violated the public trust imposed on him based on his status as a licensed firearms dealer and a reserve deputy sheriff. Further, the trial court showed substantial leniency in granting defendant probation. Under these circumstances, the trial court did not abuse its discretion by failing to grant even further leniency by treating the assault weapons convictions as misdemeanors.

## DISPOSITION

The judgment is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

EDMON, J.[*]

We concur:

EPSTEIN, P. J.

WILLHITE, J.

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10